**Romeo Tony EAGLEHORSE, Petitioner and Appellant,**

v.

**STATE of South Dakota, Respondent.**

No. 12820.

Supreme Court of South Dakota.

Argued Nov. 15, 1979.

Decided Dec. 20, 1979.

John E. Simko of Woods, Fuller, Shultz & Smith, Sioux Falls, for petitioner and appellant.

Lori Wilbur, Asst. Atty. Gen., Pierre, for respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WOLLMAN, Chief Justice.

Petitioner appeals from the circuit court's denial of his petition for post-conviction relief.[1] We affirm.

On October 26, 1975, the Glenn Arneson family of Hayti, South Dakota, visited the State Capitol at Pierre. While touring the Capitol Building, Mr. and Mrs. Arneson and their youngest child were confronted in an open hallway on the fourth floor by petitioner and another man, Robert Stein. After asking the Arnesons if there were any other people in the building, petitioner pulled a knife and demanded money from them. Mr. Arneson complied, giving him $20.00. Petitioner then demanded that the Arnesons gather the rest of their family, including two other children who had run ahead, and forced them at knife point to a secluded room on fourth floor, blocking the only exit from that room. Petitioner again demanded money, ordering the Arnesons to place all their money on a table. Petitioner then proceeded to torment the members of the family, starting with the youngest child, an eight-year-old girl. He picked her up by the hair, held the knife to her throat, and demanded that she give him her money. After demanding photos of the family, petitioner threatened to kill them if they ever informed the authorities of what had happened. Petitioner continued to torment the family by holding the knife to Mr. Arne-

---

1. Contrary to the State's contention, we conclude that petitioner raises a jurisdictional question properly cognizable under the Post- conviction Procedure Act (now SDCL 23A–34–1 et seq.).

son's neck and asking the rest of the family if they would like to watch him die. Petitioner told the Arnesons that he, petitioner, was a killer, and forced the parents to drink vodka from a bottle with him. He also threatened to cut the eight-year-old girl's eyes out with his knife. After leaving for a few minutes, petitioner returned and grabbed Mrs. Arneson. At this time Mr. Arneson was able to strike petitioner with the vodka bottle, allowing the family to run to safety. All told, the Arnesons were held in the room at knife point for from forty-five minutes to an hour after Mr. Arneson first gave petitioner the $20.00 in the hallway.

Petitioner was originally charged with five counts of kidnapping and three counts of robbery; at arraignment, petitioner pleaded not guilty and not guilty by reason of mental illness to all the charges. Before jury trial and pursuant to a plea bargain, petitioner pleaded guilty to one count of robbery and one count of kidnapping, and the State dismissed the other charges.

Petitioner argues that the landmark case of *People v. Levy*, 15 N.Y.2d 159, 256 N.Y. S.2d 793, 204 N.E.2d 842 (1965), *cert. denied* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965), compels this court to reverse the kidnapping convictions. In *Levy*, defendants accosted a couple and forced them to drive around in the couple's own car for twenty minutes while defendants robbed them. Defendants were tried and convicted of both robbery and kidnapping; the kidnapping convictions were reversed by the New York Court of Appeals, which ruled that the detention of the victims was merely incidental to the crime of robbery and not a separate offense.

Petitioner also relies on the California Supreme Court case of *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969). In *Daniels*, which involved the robbing, raping and terrorizing of three women who were forced to move about their homes various distances of from five to thirty feet,

the California Court reversed the kidnapping convictions as being incidental to robbery. The court in that case stated that "when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him . . . his conduct generally will not be deemed to constitute the offense [of kidnapping]." 80 Cal.Rptr. at 910, 459 P.2d at 238. *Daniels* stands for the principle that if the kidnapping is only incidental to another crime, such as robbery, and if the victim is not exposed to a substantially greater risk of harm than would necessarily be present in the robbery, then the movement and detention of the victim are not sufficient to establish the separate crime of kidnapping.

The circuit court found as a fact that petitioner's act in taking the Arnesons to a secluded room in the Capitol Building and there threatening and harassing them was not merely incidental to the offense of robbery and concluded that there was a sufficient factual basis in the record to justify petitioner's conviction for kidnapping.

At the time of the offense in question, SDCL 22–19–1 provided: "Whoever shall seize, confine, inveigle, decoy, kidnap, abduct or carry away any person and hold or detain such person for ransom, reward, or otherwise, except in the case of an unmarried minor by a parent thereof, shall be guilty of kidnaping . . . ." In *State v. Reiman*, 284 N.W.2d 860, 873 (S.D.1979), we stated that "[w]e find it unreasonable to sustain a conviction for kidnapping which is unsupported by evidence aside from acts incidental only to another crime," and reversed the kidnapping convictions of two of the kidnap-rape defendants on the ground that the movement of the victim compelled by them "was no more than incidental to the commission of the forcible rape and did not substantially increase the risk of harm otherwise present," citing the *Daniels* case, supra. 284 N.W.2d at 874. Applying the *Daniels/Levy* test as set forth in *Reiman*,[2]

---

2. In *State v. Reiman*, 284 N.W.2d 860 (S.D. 1979), we rejected defendant's contention that "any asportation of the victim must be considered only as an integral part of the crime of rape. Asportation or kidnapping is not necessarily involved in forcible rape." Nor do we

supra, the facts in the case at bar mandate affirmance of the kidnapping conviction. The record is clear that after the robbery was completed in the open hallway, petitioner proceeded to "confine" and "detain" the family at knife point in an empty room, behind a closed, windowless door. There petitioner threatened and detained the family for a considerable period of time, not to facilitate the robbery, which had already occurred, but to terrorize them, until they were able to effect a forcible escape. The robbery was or could have been completed in the hallway at knife-point. Petitioner did not stop there, however. He moved the family to a vacant room where detection by security guards or passersby was unlikely, and harassed, threatened and terrorized each of them individually. This asportation and detention by force was certainly not essential to the robbery; nor was it "merely incidental" to the robbery. Furthermore, it unquestionably increased the risk of harm to which the victims were exposed during the robbery, given the fact that the victims were confined to a small, windowless room far from the view of other visitors or the security guards.

Thus, the kidnapping was a severable and distinct act that comprised the elements of kidnapping as set forth in SDCL 22–19–1 and constituted a separate, distinct offense punishable as such. *State v. Teutsch*, 80 S.D. 462, 126 N.W.2d 112 (1964).

The judgment denying petitioner's petition for post-conviction relief is affirmed.

All the Justices concur.

believe it is necessarily involved in robbery. In the case at bar, we believe grounds for the kidnapping conviction were proven under either strict construction of SDCL 22–19–1, or under a *Daniels/Levy* rationale.