STATE of South Dakota, Plaintiff and Appellee,

v.

John Thomas CURTIS, Defendant and Appellant.

No. 13038.

Supreme Court of South Dakota.

Argued Oct. 16, 1980.

Decided Nov. 26, 1980.

---

Jon R. Erickson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John T. Elston, Public Defender for Pennington County, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## ACTION

On January 22, 1980, a Pennington County jury found John Thomas Curtis (appellant) guilty of kidnapping (in violation of SDCL 22·19–1) and of attempted murder (in violation of SDCL 22–16–4 and 22–4–1). Appellant was sentenced to life imprisonment on the kidnapping conviction and to 25 years imprisonment on the attempted murder conviction, the sentences to run concurrently. On appeal, appellant argues that the trial court erred in: 1) not instructing the jury on the offense of attempted kidnapping; and 2) not instructing the jury that where the kidnapping is incidental to another crime, and the victim is not exposed to any greater risk than would have otherwise been present, the separate and distinct crime of kidnapping is not sufficiently established to warrant a conviction thereon. Appellant· also argues that his sentence was excessive. We affirm.

## FACTS

At approximately 11:00 p. m., on September 12, 1979, Diana Kuehn (victim) was leaving a supermarket in Rapid City, South Dakota, where she worked part–time as a cashier. Upon arriving at her automobile, which was parked in the lot in front of the supermarket, the victim heard someone call out her name. The victim saw and recognized the person calling her as being appellant, a person with whom she had experienced a limited contact with on previous occasions when he was a customer at the supermarket where she worked. A conversation between appellant and the victim then occurred outside the victim's automobile. Appellant stated that his motorcycle

had broken down and asked the victim to give him a ride to the state driver's license station where a friend of his was waiting. Appellant also stated that, on a prior occasion, he had been very late in getting home due to the victim's refusal to give him a ride. The victim was hesitant and reluctant due to her relative unfamiliarity with appellant, but she eventually acquiesced to appellant's request. Appellant sat on the front passenger seat of the victim's automobile which, according to the victim, was a "pretty small car."

After the automobile had left the parking lot and turned onto West Main Street, appellant produced a knife and rested it on his left knee, in full view of the victim. The victim testified that this knife was approximately "five or six inches long." Appellant told the victim to keep driving and he would not have to hurt her. Appellant eventually instructed the victim to turn on St. Onge Street, which is near the state driver's license station. The victim, however, did not turn but proceeded on for approximately ½ block, where a Taco John's restaurant was located. At that time, several people were congregating near the restaurant's parking lot. At this point, the victim stopped the car along the street because she felt she "just could not go on." The victim grabbed the door handle of the automobile to get out, but appellant told her to remove her hand. The victim then asked appellant how he could do something like this to her because she hardly knew him and she had never done anything to hurt him. Appellant replied by stating "that just made it easier." The victim tried to leave the automobile at this time, but appellant grabbed her arm, pulled her back in, and began stabbing her. The victim said she felt being stabbed about five times before momentarily losing consciousness and rolling out of the automobile onto the pavement, with one of her legs still partially within the automobile. Appellant, who was still in the automobile, then reached over and stabbed the victim between her legs. The victim then rolled over and started running to the Taco John's restaurant. She began screaming and fell, whereupon some nearby individuals came to her rescue. Appellant fled on foot and was apprehended shortly thereafter. According to the victim, four minutes elapsed between the time she first saw the knife and when she was outside of the automobile. The victim testified that during the entire incident, she was "scared, really scared."

## ISSUES

### I.

Did the trial court err in not instructing the jury on the offense of attempted kidnapping? We hold that it did not.

### II.

Did the trial court err in not instructing the jury that where the kidnapping is incidental to another crime, and the victim is not exposed to a greater risk than would have otherwise been present, the crime of kidnapping has not occurred? We hold that it did not.

### III.

Is appellant's sentence cruel and unusual so as to constitute a denial of due process? We hold that it is not.

## DECISION

### I.

Appellant argues that the trial court erred in not instructing the jury on the offense of attempted kidnapping. The trial court rejected appellant's proposed instruction No. 1, which provides:

The essential elements of the offense of attempting to commit a crime as charged each of which the State must prove beyond a reasonable doubt, are:

1. That the appellant had the specific intent to commit the crimes of attempted murder and kidnapping; and

2. That at the time and place alleged in the information he did a direct act in the execution of such specific intent and toward the execution of the crime; and

3. That he failed or was prevented or was intercepted in the perpetration of the crime.

█ A trial court should instruct a jury as warranted by the evidence presented. *State v. Grey Owl*, 295 N.W.2d 748 (S.D. 1980); *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D.1979); *Egan v. Sheffer*, 80 S.D. 684, 201 N.W.2d 174 (1972). The question is whether any reasonable view of the facts in this case warrant an instruction on attempted kidnapping.

SDCL 22–19–1 states:

Any person who shall seize, confine, inveigle, decoy, abduct or carry away any person and hold or detain such person, except in the case of an unmarried minor by a parent thereof, for any of the following reasons:

(1) To hold for ransom or reward, or as a shield or hostage;

(2) To facilitate the commission of any felony or flight thereafter;

(3) To inflict bodily injury on or to terrorize the victim or another; or

(4) To interfere with the performance of any governmental or political function;

is guilty of kidnapping. Kidnapping is a Class 1 felony, except if the person has inflicted a gross permanent physical injury on the victim, in which case it is a Class A felony.

Appellant argues that due to two factors listed below, he never really consummated the kidnapping:

1. The victim was with appellant for only four minutes; and

2. The victim, during those four minutes, continuously resisted appellant, that is, she did not comply with appellant's request to turn onto St. Onge Street, but rather subsequently tried to leave the automobile.

In *State v. Autheman*, 274 P. 805 (Idaho 1929), the Idaho Supreme Court held that when a defendant forces the driver of a vehicle to take him to places as he (defend-ant) wishes to go, the defendant is guilty of kidnapping. In view of this state's kidnapping statute, it is clear that appellant did kidnap the victim. The victim was confined in her automobile by appellant for the apparent purpose of terrorizing or inflicting bodily injury on her. Even though the victim did not comply with appellant's request to turn down St. Onge Street, and fled the automobile when she stopped on her own accord, appellant's actions and words indicate that the victim was, in fact, kidnapped.

## II.

█ Appellant secondly argues that the trial court erred in not submitting to the jury his proposed instruction No. 2, which provides:

You are instructed that where the kidnapping is only incidental to another crime and where the victim is not exposed to a substantially greater risk of harm than would necessarily be present in the commission of that crime then the movement and determination of the victim are not sufficient to establish the separate crime of kidnapping.

This proposed instruction has its theoretical origin in two recent South Dakota cases: *Eaglehorse v. State*, 286 N.W.2d 329 (S.D. 1979), and *State v. Reiman*, 284 N.W.2d 860 (S.D.1979). These two cases indicate this Court's adoption of the Daniels/Levy test,* which narrows the applicability of the South Dakota kidnapping statute to those cases in which 1) the kidnapping is not an essential element of some other clearly identified crime and 2) the victim is exposed to an increased risk of harm because of the kidnapping.

*Eaglehorse* involved a defendant who forced a family into a secluded room in the State Capitol Building and threatened and harassed them with a knife for approximately one hour. Immediately prior to this, the defendant had robbed the father of the family in the hallway at knifepoint. This Court ruled that the holding of the family

---

* See *People v. Daniels*, 71 Cal.2d 1119, 80 Cal. Rptr. 897, 459 P.2d 225 (1969); *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965).

in the State Capitol room (the act of kidnapping) was not essential nor incidental to the robbery; thus, the kidnapping was a severable and distinct act, and constituted a separate, distinct offense punishable as such.

In *Reiman*, this principle was again followed as we stated: "We find it unreasonable to sustain a conviction for kidnapping which is unsupported by evidence aside from acts incidental only to another crime." 284 N.W.2d at 874. *Reiman* reversed the kidnapping convictions of two of the four defendants convicted of rape and kidnapping on the ground that the movement of the victim compelled by them was merely incidental to the commission of the forcible rape, and did not substantially increase the victim's risk of harm otherwise present.

The flaw in appellant's position is that it cannot be shown, nor does the evidence indicate, that the kidnapping was incidental to another crime. In *Reiman*, the charge of kidnapping stemmed from the act of rape; in *Eaglehorse*, the robbery took place, then the separate crime of kidnapping subsequently occurred. We affirm the trial court's decision to reject appellant's proposed instruction No. 2.

## III.

Appellant finally contends that the sentence imposed by the trial judge was cruel and unusual and constituted a denial of due process. Appellant received 25 years imprisonment for the attempted murder conviction (a class 2 felony) under SDCL 22–4–1(5) and SDCL 22–6–1(3), and was also sentenced to life imprisonment for the kidnapping conviction (a class 1 felony) under SDCL 22–19–1 and SDCL 22–6–1(2). Both sentences are the maximum allowed under the applicable statutes and are to run concurrently. Appellant had no prior convictions.

This Court has stated that a sentence within statutory limits is not reviewable on appeal. *State v. Padgett*, 291 N.W.2d 796 (S.D.1980); *State v. Helm*, 287 N.W.2d 497 (S.D.1980). We have also stated, however, that a sentence may be constitutionally offensive if its duration is so excessive as to shock the conscience. *State v. Helm*, supra.

Upon review of the facts of this case, we hold that appellant's sentence, while severe, is not so cruel and unusual as to shock the conscience of the Court.

The judgment of the trial court is affirmed.

All the Justices concur.

