#24051-a-SLZ

**2007 SD 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

   v.

FADI OMAR ZAKARIA,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN A. SEVERSON
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                           and appellee.


JULIE HOFER
Minnehaha County Public
 Advocate's Office
Sioux Falls, South Dakota                  Attorney for defendant
                                           and appellant.

\* \* \* \*

ARGUED NOVEMBER 28, 2006

OPINION FILED **03/14/07**

#24051

ZINTER, Justice

[¶1.]    Fadi Zakaria was convicted of first degree robbery and committing or attempting to commit a felony with a firearm. He appeals claiming: the introduction of a taped police interview of a co-defendant violated his Sixth Amendment right of confrontation; the trial court erred in admitting a gun found after the robbery; and questioning in taped police interviews impermissibly commented on his credibility. We affirm.

## Facts and Procedural History

[¶2.]    On March 2, 2004, an employee and one customer were inside the Royal Flush Casino in Sioux Falls, South Dakota. At approximately 8 p.m. two men entered the casino wearing ski masks. One of the men was holding a pillowcase. One of the men pointed a pistol at the employee and demanded money. The gun was described by the witnesses as silver or black, small, shiny, and nickel-plated. The employee gave the man with the pillowcase $1,556.25. The customer observed the men leave in an easterly direction and enter an alley. The customer stopped a passing car and told the occupants what had happened. The occupants of the car also observed two men running in the alley. As they proceeded north, the two men ran out in front of the passing car. One of the men got into a white car located approximately one and a half blocks northeast of the casino, while the other continued running. Witnesses recorded the license plate number of the white car.

[¶3.]    Two men were eventually linked to this crime. Footprints consistent with Zakaria's shoes were found between the casino and the white car. The car was registered to Autumn Hooker. Shortly after the robbery police found the white car

about a block away from Hooker's house. Footprints consistent with Zakaria's shoes led from the car to the Hooker house. Zakaria was Hooker's boyfriend, and he lived at that residence. There was also testimony that it was normal for Zakaria to use Hooker's car.

[¶4.]    William Reath was also apprehended shortly after the robbery. He was found on Cliff Avenue, approximately three blocks east and six blocks south of the white car. Cliff Avenue is a through street providing a direct route to Hooker's residence. Reath also lived at the Hooker residence.

[¶5.]    Police obtained a search warrant for the house and the car. Inside the car they found a black ski mask and a blue pillowcase that contained $256. In the basement of the house, under the sheets of a bed, they found a cigar box containing $1,260.

[¶6.]    The next day, a yellow coat matching a description of that worn by one of the robbers was found about two and a half blocks northeast of the casino. On May 11, 2004, a little over two months after the robbery, a pistol was found about three blocks northeast of the casino by a man cleaning his yard. The gun was about one inch deep in mud. It was loaded and was found on a line extending from the place where one man entered the white car to the place where the yellow jacket was discarded and, finally, to the yard in which the pistol was found. Reath was found approximately seven blocks east and south of the pistol on Cliff Avenue.

#24051

[¶7.]        Zakaria and Reath were tried together.[1]  Video recordings of police interviews of both Zakaria and Reath were admitted, but neither defendant testified.  Reath was found not guilty.  Zakaria was convicted.  He appeals raising the following issues:

> 1.  Whether the trial court committed a *Bruton* error in conducting a joint trial in which Reath's taped police interview was admitted without an opportunity for Zakaria to cross-examine Reath.
>
> 2.  Whether the trial court erred in admitting the gun into evidence.
>
> 3.  Whether the trial court erred in admitting Zakaria's taped police interview that contained statements by police questioning his credibility.

**Decision**

*Bruton and the Right of Confrontation*

[¶8.]        Zakaria first alleges that playing the videotape of co-defendant Reath's interview violated Zakaria's right of confrontation under *Bruton v. United States*, 391 US 123, 88 SCt 1620, 20 LEd2d 476 (1968).  Alleged violations of constitutional rights are reviewed de novo.  State v. Carothers, 2005 SD 16, ¶7, 692 NW2d 544, 546.

[¶9.]        *Bruton* held that limiting instructions do not cure a confrontation violation when hearsay evidence, given by a co-defendant, incriminates the other defendant.  *Id*. at 137, 88 SCt at 1628, 20 LEd2d at 485-486.  However, *Bruton* is not applicable when statements of co-defendants are not inculpatory.  The Supreme Court has noted:

---

1.     Zakaria's appellate counsel did not represent him at trial.

-3-

> There is an important distinction between this case and *Bruton,* which causes it to fall outside the narrow exception we have created. In *Bruton,* the codefendant's confession "expressly implicat[ed]" the defendant as his accomplice. [391 US] at 124, n1, 88 SCt at 1621, n1. Thus, at the time that confession was introduced there was not the slightest doubt that it would prove "powerfully incriminating." *Id.* at 135, 88 SCt at 1627. By contrast, in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial. . . .

Richardson v. Marsh, 481 US 200, 208, 107 SCt 1702, 1707, 95 LEd2d 176, 186 (1987). We have also recognized this distinction. *See* State v. Johnson, 509 NW2d 681, 686 (SD 1993) (concluding no error in refusal to sever, because the statements were not inculpatory); *compare* Iron Shell v. Leapley, 503 NW2d 868, 870 (SD 1993) (concluding that under *Bruton,* the admission of inculpatory statements violates the Sixth Amendment).

[¶10.] In this case, Reath's statements did not expressly implicate Zakaria. The only arguably incriminatory matter involved the question of whether the two were together that day. And on that question, each defendant's statement was internally inconsistent.

[¶11.] More specifically, Reath, in his statement, initially denied going out stating: "I was home all day today." Then he stated that he did go out looking for work between 7 a.m. and 3 p.m. But he also initially insisted that he did not accompany Zakaria: "I didn't go nowhere with Fadi . . . me and Fadi was not in the car." Later, however, he said that "me and Fadi we went to get his girlfriend." In comparison, Zakaria admitted that Reath was with him that day. "I just drove around . . . I went to my friend's house . . . I can't say his name . . . [Reath] was with me." However, Zakaria later indicated concern about what would happen if his

alibi witness indicated that they had been doing something wrong. He then said, "Alright man, I lied man, I wasn't with nobody." A review of the videotaped interview does not reflect whether Zakaria meant that he lied about being with his friend, or about being with Reath, or both. Ultimately, however, both men's statements consistently denied any involvement in the robbery, and neither Zakaria nor Reath ever implicated the other in the robbery.[2]

[¶12.]        Therefore, this case falls within the rule of *Richardson* rather than *Bruton*. *Bruton* involved a confession by a co-defendant that directly implicated Bruton with "powerfully incriminating" evidence. *Richardson*, 481 US at 208, 107 SCt at 1707, 95 LEd2d at 186. In contrast, neither Reath nor Zakaria confessed or implicated the other. Because Reath's statements were not inculpatory, and certainly were not powerfully incriminating, the trial court did not violate *Bruton* by refusing to sever and utilizing a limiting instruction.[3]

---

2.     Although Zakaria argues that Reath's statement damaged Zakaria's alibi defense, Zakaria did not give notice of an alibi defense as required by SDCL 23A-9-1(Rule 12.1(a)).

3.     The trial court gave limiting instructions concerning the use of the statements, which can best be categorized as inferentially incriminating. "[W]ith regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget." *Richardson*, 481 US at 208, 107 SCt at 1708, 95 LEd2d at 186.

In this case, a preliminary jury instruction told the jury that "a particular item of evidence is sometimes received for a limited purpose. [The judge will] tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used." Then, before publishing the first of the taped interviews, the trial court gave the following instruction:

(continued . . .)

[¶13.]     Zakaria also argues that he was entitled to severance under SDCL 23A-11-2, Rule 14 of the Rules of Criminal Procedure. When considering severance under the Rules, "[t]he trial court's refusal to grant a severance motion will be reversed on appeal only if the defendant demonstrates an abuse of discretion." State v. Jenner, 434 NW2d 76, 80 (SD 1988) (citations omitted). "The defendant establishes an abuse of discretion by showing *substantial* prejudice which constitutes a denial of a fair trial." *Id.* (emphasis in original) (citations omitted). "'A certain amount of prejudice to a defendant is regarded as acceptable given the judicial economies that result from joinder.'" *Id.* (quoting United States v. Carpentier, 689 F2d 21, 27 (2ndCir 1982)). "'The [trial] court must consider not only possible prejudice to the defendant . . . but also possible prejudice to the government because of two time-consuming, expensive, and duplicitous trials.'" State v. Johnson, 2004 SD 135, ¶13, 691 NW2d 319, 323 (quoting State v. Andrews, 393 NW2d 76, 79 (SD 1986)).

---

(. . . continued)

> Questions and statements by the police are not evidence. Statements made by the defendant are evidence but only may be considered in your deliberation regarding the charges against that person. In this trial with two defendants, you must make a distinction and only consider this evidence with regard to the defendant who made the statements.

An almost verbatim instruction was given again after Reath's interview was published.

[¶14.]    In considering the analogous Federal Rules of Criminal Procedure,[4] the Supreme Court held that severance is not required simply because there are conflicting defenses. Zafiro v. United States, 506 US 534, 538-539, 113 SCt 933, 937-938, 122 LEd2d 317, 324-325 (1993). Instead "when defendants properly have been joined . . . a . . . court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 US at 539, 113 SCt at 938, 122 LEd2d at 325. In this context we have stated that:

> To cause the type of prejudice that prevents co-defendants from obtaining a fair trial, the defenses must be more than merely antagonistic. They must conflict to the point of being irreconcilable and mutually exclusive so that acceptance of one defendant's defense will preclude the acquittal of the other defendant.

*Jenner*, 434 NW2d at 80 (citations omitted). Even "one defendant's desire to exculpate himself by inculpating a co-defendant does not necessarily render the defenses irreconcilable and mutually exclusive." State v. Shape, 517 NW2d 650, 656 (SD 1994) (citing *Jenner*, 434 NW2d at 81).

[¶15.]    In this case, the defenses (and statements) were not so irreconcilable and mutually exclusive that acceptance of Reath's statements precluded acquittal of Zakaria. As previously noted, Reath's statement did not implicate Zakaria.

---

4.    Federal Rules of Criminal Procedure 8(b) and 14. The same rules are found in SDCL 23A-6-24 (Rule 8(b)) (Joinder of two or more defendants in same indictment or information), and SDCL 23A-11-2 (Rule 14) (Relief from prejudicial joinder of offenses or defendants).

Furthermore, both defendants' statements were internally inconsistent in that both defendants alternately admitted and denied being with the other at some point during the day. And finally, the acceptance of either version of Reath's statement would not have precluded the acquittal of Zakaria. Under these circumstances, the trial court did not abuse its discretion in refusing to sever under SDCL 23A-11-2.

[¶16.] Zakaria, however, argues that even if severance was not required under the Rules of Criminal Procedure or *Bruton*, the admission of Reath's statement without opportunity to cross-examine violated Zakaria's Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 US 36, 124 SCt 1354, 158 LEd2d 177 (2004). Issues involving this constitutional right are reviewed de novo. *Carothers*, 2005 SD 16 at ¶7, 692 NW2d at 546.

[¶17.] "Where [the admission of] testimonial [hearsay] is at issue,[] the Sixth Amendment demands what the common-law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 US at 68, 124 SCt at 1374, 158 LEd2d 177. Reath was unavailable for cross-examination because he was a co-defendant, but he was not previously cross-examined concerning his statement. Therefore, Zakaria asserts a *Crawford* violation.

[¶18.] However, we need not address the merits of this issue because, even assuming there was a *Crawford* error, it was harmless. It is now well accepted that admission of a co-defendant's statement without opportunity to cross-examine is subject to harmless error analysis. United States v. McClain, 377 F3d 219, 222-223 (2ndCir 2004) (stating that *Crawford* does not change harmless error review of confrontation violations). *See also* United States v. Pugh, 405 F3d 390 (6thCir

2005)[5]; United States v. Summers, 414 F3d 1287 (10thCir 2005); United States v. Rodriguez-Marrero, 390 F3d 1 (1stCir 2004); State v. Nguyen, 281 Kan 702, 133 P3d 1259 (2006).  We have also applied harmless error analysis in similar circumstances.  *See* State v. Herrmann, 2004 SD 53, ¶23, 679 NW2d 503, 510 (finding that any Sixth Amendment violation was harmless error); State v. Frazier, 2001 SD 19, ¶¶27-33, 622 NW2d 246, 257-259 (finding that confrontation error in the admission of hearsay was not harmless).

[¶19.]    "The harmless error doctrine preserves the essential purpose of criminal trials:  to decide a defendant's guilt or innocence.  The rule 'promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'" *Frazier,* 2001 SD 19, ¶30, 622 NW2d at 258 (quoting *Delaware v. Van Arsdall,* 475 US 673, 681, 106 SCt 1431, 1436, 89 LEd2d 674, 684-685 (1986)).  "The harmless error rule

---

5.    The Sixth Circuit stated:

> While we are firmly convinced that the district court abused its discretion and violated the rule established in *Crawford* and *Cromer,* we must also address whether this violation was a harmless error.  *See* Jordan v. Hurley, 397 F3d 360, 363 (6thCir 2005) ("Confrontation Clause violations are subject to harmless error review.").  "In determining whether an error is harmless, the reviewing court 'must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened.'"  United States v. Hardy, 228 F3d 745, 751 (6thCir 2000) (citing Kotteakos v. United States, 328 US 750, 764, 66 SCt 1239, 90 LEd 1557 (1946)) (alteration in original).  In other words, we must find "that it was more probable than not that the error materially affected the verdict." United States v. Trujillo, 376 F3d 593, 611 (6thCir 2004).

U.S. v. Pugh, 405 F3d 390, 400-401 (6thCir 2005).

governs . . . provided the court is able to declare a belief beyond a reasonable doubt that the error was harmless and did not contribute to the verdict obtained." State v. Michalek, 407 NW2d 815, 819 (SD 1987) (citations omitted). "'[H]armlessness must . . . be determined on the basis of the remaining evidence.'" Frazier, 2001 SD 19 at ¶31, 622 NW2d at 258 (quoting Coy v. Iowa, 487 US 1012, 1021-1022, 108 SCt 2798, 2803, 101 LEd2d 857, 867 (1988)).

[¶20.] In this case, the remaining evidence at Zakaria's trial included footprints consistent with those of Zakaria found between the casino and the white car, as well as leading from the white car to Hooker's home. A pillowcase was found in the car, and an amount of money consistent with that taken was found secreted in the pillowcase and at Zakaria's residence. Additionally, a pistol appeared in Zakaria's room shortly before the robbery and disappeared after the incident. Finally, Zakaria made highly incriminatory admissions in videotaped conversations with Hooker. During one conversation, Zakaria stated: "I shouldn'ta did it." Hooker asked him, "What were you thinking?" Zakaria responded, "[I] told you I wasn't thinking." He also said, "I wanted to see if I could get away." Zakaria told Hooker what he wanted her to tell detectives, and instructed her to get his jacket and "Take it somewhere."

[¶21.] Considering the nature of these statements, the physical evidence, and Zakaria's ties to the crime scene, we believe beyond a reasonable doubt that the admission of Reath's statement did not contribute to the verdict obtained.

*The Gun*

[¶22.]     Zakaria next contends that there was no evidence connecting the gun to him, to Reath, or to the robbery.  He therefore argues that admission of the gun was evidentiary error.  Evidentiary rulings are presumed correct and are reviewed under the abuse of discretion standard.  State v. Krebs, 2006 SD 43, ¶19, 714 NW2d 91, 99.

[¶23.]     This record reflects sufficient evidence connecting the gun to the robbery.  The gun at issue was a pistol that was silver except for a black handle, roughly matching the descriptions given by the casino employee and customer.  Further, the gun was found on a route approximately four blocks in length that ran northeast from the casino, to the first place the two men were observed running, to the location where the two men approached the white car, to the place where the discarded jacket was found, and to the place where the gun was later found.

[¶24.]     There was also testimony by Hooker that "a couple of days before" the robbery she observed a gun in her closet that she had not put there.  Although she was unable to describe the gun (other than saying it was small) she also testified that she had not observed it thereafter.  Considering the similar appearance of the pistol, its proximity to the scene of the crime, and Hooker's testimony, there was a sufficient connection to make the gun relevant and admissible.  The trial court did not abuse its discretion.

*Officers' Statements*

[¶25.]     The interviews of Reath and Zakaria contained a number of accusations by the police that Reath and Zakaria were lying.  Zakaria contends that

the admission of these interviews constituted impermissible opinion testimony on his character. Admission of such videotaped evidence is reviewed under the abuse of discretion standard. *State v. Running Bird*, 2002 SD 86, ¶34, 649 NW2d 609, 616.

[¶26.] It must first be noted that in making this argument, Zakaria relies on cases that are not applicable because they either involve *trial testimony* by police directly impugning a defendant's veracity[6] or they applied a different rule of law.[7]

---

6. In *People v. Allen*, 222 AD2d 441, 442, 635 NYS2d 40 (1995), the prosecutor asked "a detective's opinion on the truth of the defendant's statement, the effect of which was to solicit his opinion of the defendant's credibility." Similarly, in *State v. Engesser*, 2003 SD 47, 661 NW2d 739, "[a]fter the tape [of defendant's interview] was played, the trial court allowed [the trooper] to express his opinion on [defendant's] truthfulness in the interview." *Id.* ¶30, 661 NW2d at 749. In both cases, the statements involved trial opinion testimony on credibility that was later determined to be harmless error. *Id.* ¶35, 661 NW2d at 751; *Allen*, 222 AD2d at 442, 635 NYS2d 40.

7. Pennsylvania *categorically* requires redaction of such statements from recorded interviews used at trial. *Commonwealth v. Kitchen*, 730 A2d 513, 521-522, 1999 PA Super 100, ¶¶30-31. Kansas also bars such statements, reasoning that they are inappropriate through live witnesses, and therefore, are inappropriate on video. *State v. Elnicki*, 279 Kan 47, 57, 67, 105 P3d 1222, 1229, 1236 (2005).

   There is, however, a split of authority on this issue. *See Elnicki*, 279 Kan at 54-57, 105 P3d at 1227-1229 (discussing the holdings of various jurisdictions on allowing videotape evidence containing assertions by police). The Ninth Circuit holds that admission of taped interviews is not error; and even if it is error, it can be cured by limiting instructions. *Dubria v. Smith*, 224 F3d 995, 1000-1003 (9thCir 2000). Idaho applies harmless error analysis. *State v. Cordova*, 137 Idaho 635, 639-642, 51 P3d 449, 453-456 (IdahoApp 2002). Missouri holds that police statements on interrogation videos are not error. *State v. Palmes*, 964 SW2d 241, 243-244 (MoAppSD 1998). In a split opinion, Washington concluded that admission of videos was not error, or if it was, it was subject to harmless error analysis. *State v. Demery*, 144 Wash2d 753, 30 P3d 1278 (2001).

(continued . . .)

In this case the police accusations were not trial testimony concerning Zakaria's character. Instead, the accusations were made in a taped interview shortly after the crime. Most importantly, the accusations of untruthfulness were not opinion testimony on Zakaria's character. Instead, they were a part of the police officers' psychological tactics used to attempt to elicit statements during the interrogation. Indeed, the tape of that interview rather clearly reflects that a reasonable juror would have discerned the difference between these interrogation tactics and opinion testimony. This understanding is supported by the officer's explanation of those techniques to the jury prior to the showing of the videos.

> Q. During the course of your interview, do you employ any investigative techniques in this particular interview, Sergeant?
> A. We employ – I have been to several interview schools. I use the Reid, advanced Reid and some other interview techniques that we pick up along the way.
> Q. When you talk about the Reid technique, what is the Reid technique?
> A. The one I think you are talking about is the advanced Reid where you give people options. You try to lessen the degree of seriousness in their mind to get them to admit to what they did. Sometimes you tell them things that aren't necessarily true. Not so that you would get an innocent person to confess but something that would make a person that is guilty realize that you know we had him and he would talk.[8]
> Q. So in the course of this interview are you saying things to Mr. Zakaria that aren't true?
> A. That we don't know for sure, yes.

---

(. . . continued)

> We have declined to apply a categorical rule of exclusion. *See* State v. Running Bird, 2002 SD 86, ¶¶31-35, 649 NW2d 609, 616. Therefore, Zakaria's authorities are inapposite.

8.   The police were untruthful with Reath and Zakaria by falsely stating, in separate interviews, that each had incriminated the other.

This conclusion is also supported by the fact that before the tape of Zakaria's interview, the trial court specifically instructed the jury that: "Questions and statements by the police are not evidence. . . ." After seeing Reath's interview, the jury was again instructed that police statements were not evidence.

[¶27.]     This Court considered a similar situation in *Running Bird*, 2002 SD 86 at ¶¶31-35, 649 NW2d at 616. We concluded that it was not an abuse of discretion to admit a videotaped interview in which a defendant's credibility was questioned because the officer's statements were not "direct testimony," and the trial court gave a limiting instruction. *Id*. at ¶35, 649 NW2d at 616. Because the same situation is present here, we find no abuse of discretion in admitting the videotape containing the officers' accusations.

[¶28.]     Affirmed.

[¶29.]     GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶30.]     SABERS, Justice, concurs in result.


SABERS, Justice (concurring in result).

[¶31.]     I concur in result because I am unwilling to approve conduct of police officers where they lie to the suspects to get them to make admissions against themselves or their companions. Here, "the police were untruthful," by falsely stating, in separate interviews with Reath and Zakaria, "that each had incriminated the other." This is conceded by the majority opinion and constitutes conduct unworthy of approval by this Court.