2003 SD 128
**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jeremy SMITHERS, Defendant and Appellant.**

**No. 22623.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 25, 2003.

Decided Oct. 15, 2003.

Lawrence E. Long, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, for plaintiff and appellee.

Thomas M. Issenhuth, Madison, for defendant and appellant.

ZINTER, Justice.

[¶ 1.] Jeremy Smithers was convicted of nine drug related offenses including possession and distribution of methamphetamine.[1] He appeals contending that the trial court erred: 1) in allowing the State to present evidence of the discovery of methamphetamine in another county, when the test results of that evidence was not disclosed in discovery; and 2) in finding adequate evidence to corroborate accomplice testimony. We affirm.

### FACTS AND PROCEDURAL HISTORY

[¶ 2.] Chad Blasius, an acquaintance of Jeremy Smithers, lived at a house in Madison, which is in Lake County, South Dakota. One of Blasius's roommates, J.M., was under the supervision of juvenile corrections agent Ryan Smit. Smit stopped at the residence around 11 p.m. to conduct an alcohol check on J.M. Because J.M. was not home, Smit returned to the house

---

1. They include: (1) unauthorized possession of methamphetamine with intent to distribute (SDCL 22–42–2; 34–20B–16(6)); (2) unauthorized possession of methamphetamine with intent to distribute in a drug-free zone (SDCL 22–42–19, 22–42–20, 22–42–2, 34–20B–16(6)); (3) unauthorized distribution of methamphetamine to Amber Alfson (SDCL 22–42–2, 34–20B–16(6)); (4) unauthorized distribution of methamphetamine to Amber Alfson in a drug-free zone (SDCL 22–42–19, 22–42–20, 22–42–2, 34–20B–16(6)); (5) unauthorized distribution of methamphetamine to Marin Moran (SDCL 22–42–2, 34–20B–16(6)); (6) unauthorized distribution of methamphetamine to Marin Moran in a drug-free zone (SDCL 22–42–19, 22–42–20, 22–42–2, 34–20B–16(6)); (7) unauthorized possession of a controlled substance (SDCL 22–42–5, 34–20B–16); (8) ingesting a substance, other than alcohol, for the purpose of becoming intoxicated (SDCL 22–42–15); and (9) use or possession of drug paraphernalia (SDCL 22–42A–3).

about 11:30 p.m. to try again. This time, Smit smelled marijuana in the house. He reported his discovery to the Madison Police Department, and preparations were made to obtain a search warrant.

[¶ 3.] Jeremy Smithers got off work at around midnight that evening. His girlfriend, Amber Alfson, and Blasius picked up Smithers from work. Blasius drove to his home, dropped Alfson off, and he and Smithers proceeded to Colman, which is located in Moody County, South Dakota. They went to Colman to purchase an "eight ball" (3.5 grams) of methamphetamine.

[¶ 4.] Once in Colman, Blasius and Smithers proceeded to the home of Smithers' friend, "Rebecca." Smithers paid Rebecca $200 for the methamphetamine. Blasius and Smithers talked about smoking some of it and cutting the rest into smaller amounts to sell. Blasius testified that he had the methamphetamine in his possession as he and Smithers drove back to Blasius's home in Madison.

[¶ 5.] When they returned, Blasius and Smithers went upstairs to Blasius's bedroom. They were accompanied by Alfson and Marin Moran, who had been at the house while Blasius and Smithers were in Colman. The methamphetamine was put into tinfoil, and the four smoked it through a method called "freebasing."

[¶ 6.] About the time they started freebasing, law enforcement officers entered the residence by executing a "no-knock" search warrant. The officers first secured the lower level of the house and then proceeded upstairs. As the officers got closer, Alfson flushed the methamphetamine down the toilet. Smithers, believing that a police search was a joke and that the police were not really there, reached into the toilet in an attempt to retrieve the drugs. He was not successful. When he came out of the bathroom, he was handcuffed by police, and they observed that his hands were still wet. After securing those present at the home,[2] the officers continued their search.

[¶ 7.] The search did not result in the seizure of the methamphetamine from the Madison residence. It did, however, yield drug paraphernalia that could be used for the use and sale of methamphetamine, including: a digital scale, sandwich bags, razor blades, a mirror, a hollowed-out barrel of a pen, tinfoil, a glass pipe, pieces of plastic, and cut corners of sandwich bags.

[¶ 8.] Detective Vilhauer, one of the officers participating in the search, testified to the drug-related use of these items. He indicated that the razor blades would have been used to "chop [methamphetamine] down to smaller fragments" so that it could be smoked or ingested. Detective Vilhauer also indicated that small pieces of plastic would be used to package methamphetamine and cocaine in "bindles." He finally testified that "[i]n controlled substances or powders such as cocaine or methamphetamine, very often the corners [of the bags] are cut away, then that small bag is used to weigh and tie small amounts of meth or coke."

[¶ 9.] Around the time of the search, Smithers, Blasius, Alfson and Moran all gave inculpatory statements to Vilhauer. They also submitted to urinalysis. Smithers and Alfson tested positive for THC and methamphetamine. Blasius tested positive for THC, methamphetamine, and amphetamine. Moran tested positive for THC.

---

2. Officers also handcuffed Blasius's other roommate who did not participate in the events that night.

[¶ 10.] Based on the Madison (Lake County) search and the statements given, a search warrant was also obtained for the residence in Colman (Moody County) where Blasius and Smithers purchased the methamphetamine. The Colman search led to the discovery of methamphetamine, more arrests, and separate charges in Moody County.

[¶ 11.] One of the suspects arrested in the Colman search was represented by Philip Parent. Parent worked for the same law firm as Smithers' attorney, Thomas Issenhuth. In fact, Parent assisted in the representation of Smithers by appearing with Smithers at two separate court hearings. Parent also helped make arrangements to have an independent laboratory test of Smithers' urine sample. Parent finally engaged in some discovery from the Lake County State's Attorney's Office regarding Smithers' case. Parent wrote the Lake County State's Attorney asking whether any plea bargains had been made in cases relating to Smithers, including any defendants in either Lake County or Moody County. Parent asked for this information pursuant to Smithers' original discovery request.

[¶ 12.] Parent also signed a number of documents indicating that he was participating in the representation of Smithers. He signed documents titled "Defendant's [Smithers'] Response to State's Discovery Motion," and "Defendant's [Smithers'] Response to State's Motion for Assessment of Costs." He signed these documents as "Attorneys for Defendant [Smithers]." Each document also contained a preamble stating, "Comes now Jeremy Smithers, ... by and through Philip R. Parent, of Arneson, Issenhuth & Parent, LLP, attorneys for the above named Defendant...." Parent also sent a letter to the Lake County State's Attorney regarding a DNA analysis of Smithers' urine sample. In that letter, Parent referred to Smithers as "our client."

[¶ 13.] Pursuant to Smithers' discovery request, the Lake County State's Attorney's Office provided Issenhuth with all of the documents in that office's possession. That included the reports of Detective Vilhauer's interview with Smithers, Vilhauer's report regarding the execution of the Madison search warrant listing the specific items recovered and the suspects taken into custody, and a copy of the written statement Smithers provided law enforcement.

[¶ 14.] The Lake County State's Attorney's Office also provided Issenhuth with the only information it possessed regarding the Colman search. That information included a copy of a police narrative which described the search, the officers involved in the search, and the suspects arrested as a result of the search. The information also included a written report from Detective Vilhauer, which described the details of the execution of the Colman search warrant and the illegal items discovered as a result. That information clearly indicated that methamphetamine was believed to have been found in the Colman search.

[¶ 15.] The discovery information also indicated that Vilhauer could be a witness to the Colman search and what was seized there. Vilhauer was a potential witness because the report indicated that Vilhauer had found a tin in the Colman bedroom:

> In that tin was some marijuana paraphernalia and what appeared to be marijuana seeds, along with a little brown box. Inside the little brown box was what appeared to be one gram and a small plastic baggy of a white powdery substance that appeared to be methamphetamine [sic].

The report further described the items seized in the Colman search as "cash, marijuana, several small plastic baggies con-

taining a white powdery substance that appeared to be meth, as well as two larger solid rock pieces. . . ."

[¶ 16.] The Lake County State's Attorney's Office possessed no other documentation relating to the Colman search or the testing performed on the drugs seized in Colman. The reports concerning the Colman search and any accompanying laboratory tests were in the possession of the Moody County authorities because the charges that arose from the Colman search were being handled by the Moody County State's Attorney.

[¶ 17.] However, as previously mentioned, one of the defendants charged in Moody County was represented by Parent. Therefore, in the course of that representation, Parent received the reports of the Colman search from the Moody County State's Attorney's Office. The specific information Parent received from Moody County authorities included a copy of the Evidence Inventory and Receipt of the Colman search; a copy of the State Chemist's report showing positive test results for cannaboids and methamphetamine in the urine sample of "Rebecca" and the Moody County defendant represented by Parent; and, a copy of a Lab Data Collection form used in connection with the suspected methamphetamine. Parent was also provided with a report from State Chemist Roger Mathison on tested items from the Colman search. The report revealed that the evidence seized tested positive for methamphetamine. Parent finally had the narrative reports from Detective Vilhauer and the Colman Police Chief. Those reports listed the law enforcement officers who participated in the execution of the Colman search warrant, the Colman suspects, and again, the illegal items seized in Colman.

[¶ 18.] At Smithers' trial, Detective Vilhauer was permitted to testify, over Smithers' discovery objection, that methamphetamine was found in the Colman search. The State also introduced accomplice testimony from Blasius, Alfson and Moran. After trial, Smithers filed a Motion for Relief from Judgment and a Motion for Judgment of Acquittal. Smithers contended that the evidence of methamphetamine in Colman was not provided in discovery by the Lake County State's Attorney, and that the accomplice testimony was not corroborated. Both motions were denied.

[¶ 19.] On appeal, Smithers raises two issues:

1. **Whether the trial court erred in allowing Detective Vilhauer to testify that methamphetamine was found at the residence in Colman.**

2. **Whether the trial court erred in finding that there was adequate evidence to corroborate the testimony of Smithers' accomplices.**

1.

[¶ 20.] Smithers first contends that the trial court erred in allowing Detective Vilhauer to testify that methamphetamine was discovered in the Colman search. He alleges error because the test results were not provided to attorney Issenhuth by the Lake County State's Attorney pursuant to Smithers' discovery request.

[¶ 21.] "A violation of a discovery order and the court's resultant choice of, or failure to grant a remedy, is reviewed under an abuse of discretion standard." *State v. Moran*, 2003 SD 14, ¶ 10, 657 N.W.2d 319, 323 (citing *State v. Guthrie*, 2001 SD 89, ¶¶ 7–11, 631 N.W.2d 190, 193–95). Furthermore, even if a trial court has abused its discretion, there must be a showing of prejudice. "It is not error alone that reverses judgments of convic-

tions," there must be "error plus injury." *State v. Daniel,* 2000 SD 18, ¶ 17, 606 N.W.2d 532, 535 (citing SDCL 23A–44–14). Finally, to preserve alleged error for appellate review, an objection must have been made raising that issue. *Moran,* 2003 SD 14, ¶ 21, 657 N.W.2d at 325.

[¶ 22.] Smithers objected to Detective Vilhauer's testimony regarding the methamphetamine asserting two alleged discovery violations:

Q: *Did Mr. Smithers give you any indication* as to whether or not you would find additional methamphetamine at that address?

DEFENSE COUNSEL: Objection, Your Honor, *there's a pending Discovery Order* and there's been *nothing furnished* to the Defense *in regard to these conversations.*

THE COURT: The objection is overruled.

A: I don't recall that he gave us information advising there would be more there. I reacted to the information of where they had made a current and recent purchase.

. . .

Q: *When you went to the address in Colman* described by Mr. Smithers, *did you locate additional methamphetamine?*

A: *Yes sir, we did.*

DEFENSE COUNSEL: Objection, Your Honor, *this* has not been provided through discovery.

THE COURT: The objection is overruled.

(Emphasis added.)

[¶ 23.] We first observe that Smithers' first discovery objection only related to "conversations" between Detective Vilhauer and Smithers. That objection was properly overruled. Issenhuth was given Detective Vilhauer's report of his conversations with Smithers. Therefore, there was no discovery violation.

■ [¶ 24.] With respect to the second objection concerning the finding of methamphetamine in Colman, we first note that Smithers only raised a *discovery* objection to the *testimony* that Vilhauer had located methamphetamine in the Colman search. No objection was made to the *foundation* for the officer's statement that the substance seized was in fact methamphetamine. Therefore, the discovery objection did not preserve any failure to disclose scientific tests or other foundational evidence necessary to prove that the substance was methamphetamine.[3] That leaves the question on appeal whether the officer's *statement* about *locating* methamphetamine should have been excluded because that *statement* was not provided in discovery.

[¶ 25.] Although the Lake County State's Attorney provided Smithers with Vilhauer's statements indicating that he located methamphetamine in Colman, Smithers argues that the Lake County State's Attorney was also obligated to produce the Moody County test results. Smithers contends that "the burden was on [the Lake County State's Attorney] to find out the results of that search" in

---

3. We also note that the State did not introduce the methamphetamine or inquire as to *test results* from the Colman search. It was the defense that questioned Vilhauer whether the methamphetamine had been tested. Vilhauer responded that the methamphetamine had been tested. Apparently surprised by this information, the State later questioned Vilhauer and discovered that Vilhauer's knowledge of the testing arose from his previous experience testifying on these matters in Moody County.

Moody County. Smithers specifically contends that "[t]he State was obliged to *seek out* this information and provide it to defense counsel." (Emphasis added.)

[¶ 26.] This contention is misplaced for three reasons. First, as previously noted, Smithers was provided with Vilhauer's *statements* that he found methamphetamine in Colman, and Smithers failed to preserve an objection to other foundational evidence such as test results. Therefore, there was no discovery violation concerning Vilhauer's knowledge and testimony that he found methamphetamine in the Colman search.

[¶ 27.] Second, because there is no evidence to suggest that the Lake County State's Attorney had the Moody County test results, this case is governed by *State v. Erickson*, 525 N.W.2d 703 (S.D.1994). There, this Court held that "while 'the State cannot suppress evidence favorable to [a defendant, *it is not* ] the state's duty to conduct a discovery examination for a defendant.'" *Id.* at 710 (quoting *State v. Chacon*, 50 Wis.2d 73, 183 N.W.2d 84, 86 (1971)) (emphasis added).

[¶ 28.] Finally, the trial court found that both Issenhuth *and* Parent were participating in the representation of Smithers.[4] Therefore, they not only had the information regarding Smithers from the Lake County State's Attorney's Office, but they also had the Moody County information regarding the Colman search from Parent's representation of the Moody County defendant. That information included the inventory and testing of the methamphetamine seized in the Colman search. Consequently, we agree with the trial court's finding that the information relating to the Colman search was available to both Parent and Issenhuth in their representation of Smithers.

[¶ 29.] The trial court did not abuse its discretion in denying Smithers' motion for relief from judgment or for a judgment of acquittal based upon an alleged discovery violation.

**2.**

[¶ 30.] Smithers also argues that there was insufficient evidence to corroborate the testimony of accomplices Blasius, Alfson and Moran, and therefore, there was insufficient evidence to sustain a conviction. SDCL 23A–22–8 provides:

A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

In *State v. Reutter*, 374 N.W.2d 617 (S.D. 1985), we discussed this requirement of corroborative evidence, stating:

Accomplice testimony need not be corroborated by evidence sufficient to sustain a conviction. The mandate of [SDCL 23A–22–8] is satisfied where the corroborative evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and establish the guilt of the accused. There is no requirement that every material fact testified to by the accomplice be confirmed by corroborative evidence. The accused himself can provide the necessary corroboration. Finally, whether corroboration is sufficient is a question for the jury.

*Id.* at 626 (citations omitted). *See also State v. Feyereisen*, 345 N.W.2d 58 (S.D.

---

4. Smithers has not argued, let alone established that the trial court's finding of Parent's representation was clearly erroneous.

1984). In deciding this sufficiency question, circumstantial evidence may satisfy the corroboration requirement. *Id.* at 60.

[¶ 31.] At trial, accomplices Blasius, Alfson, and Moran all testified against Smithers. The State corroborated this accomplice testimony by Smithers' own statements confirming that he and Blasius went to Colman where the "eight ball" of methamphetamine was purchased. Smithers also admitted: that the methamphetamine was put on a piece of tin foil and was ingested by each of them; that some of the methamphetamine was placed on a scale; and that he had tried to recover the drugs after they were flushed in the toilet. Further corroboration came from the presence of drug paraphernalia in the room where Smithers was located at the time of the search, the presence of methamphetamine in his and his recipients' urine samples, and the fact that his hands and arms were wet from his attempted recovery of the methamphetamine from the toilet. Considering all of this evidence, the trial court concluded:

> [T]hose things standing alone [Smithers' own statements to law enforcement, the presence of drug paraphernalia in the room where Smithers was located, the fact that Smithers' arms and hands were wet at the time of his arrest, and the presence of methamphetamine in his urine] might not be sufficient to establish guilt beyond a reasonable doubt, but each of those items is corroboration of the testimony of accomplices, and the testimony of accomplices combined with that corroboration with or without the fact that there were [sic] methamphetamine found in Colman, is overwhelming to establish beyond a reasonable doubt that the Defendant committed the ... offenses with which he is charged.

We agree.

[¶ 32.] Smithers, however, contends that this evidence was only sufficient to corroborate the *possession* of methamphetamine, not the *distribution* charges. Distribute means to "deliver a controlled drug...." SDCL 22–42–1(5). Deliver or delivery is defined as "the actual or constructive transfer of a controlled drug ... whether or not there exists an agency relationship." *Id.* at (3).

[¶ 33.] According to the accomplices, Smithers and Blasius went to Colman to purchase the methamphetamine, and Smithers paid Rebecca for the drug. They indicated that some of it was transferred to Alfson and Moran by freebasing, and they planned to cut the methamphetamine in order to sell it. We believe that the drug paraphernalia, Smithers' wet hands, and Blasius's and Alfson's positive urinalyses for methamphetamine corroborated much of the accomplice testimony. Smithers' own statements that he was in the room with the drug paraphernalia, that he and Blasius drove to Colman where the methamphetamine was purchased, that they jointly shared the methamphetamine, and that he was present when the scale was used to divide the methamphetamine corroborated other material aspects of the accomplice testimony. Furthermore, "[t]here is no requirement that every material fact testified to by the accomplice be confirmed by corroborative evidence." *Reutter*, 374 N.W.2d at 626. Considered as a whole, "[t]hese are more than suspicious circumstances." *State v. Stecker*, 79 S.D. 79, 84, 108 N.W.2d 47, 49 (1961). Therefore, the jury could have reasonably concluded from all of the evidence that the accomplice testimony was corroborated and that it connected Smithers with the crimes of possession and distribution. The trial court did not abuse its discretion in refusing to grant Smithers' Motion for Judgment of Acquittal.

[¶ 34.] Affirmed.

[¶ 35.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.