#27673-a-SLZ

**2017 S.D. 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

ROGER LEE KIHEGA,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                         and appellee.


THOMAS J. COGLEY of
Ronayne & Cogley, PC
Aberdeen, South Dakota                    Attorneys for defendant
                         and appellant.

* * * *

ARGUED OCTOBER 5, 2016
REASSIGNED APRIL 20, 2017
OPINION FILED **09/20/17**

ZINTER, Justice (on reassignment).

[¶1.]          Roger Kihega appeals his convictions of first-degree robbery and possession of a firearm by a convicted felon.  He contends the State's evidence was insufficient to corroborate accomplice testimony.  He also challenges a number of the circuit court's evidentiary rulings and its sentence.  We affirm.

**Facts and Procedural History**

[¶2.]          On January 19, 2015, three men robbed the Casino Korner in Aberdeen, South Dakota.  The victims (the casino clerk and patrons) testified that between 8:30 p.m. and 9:00 p.m., two masked men armed with handguns entered the casino, discharged their weapons, and ordered everyone to get down on the floor.  One of the masked men then ordered the counter clerk to "get the money" while the other took a wallet and cellphone from one of the patrons lying on the floor.  After taking approximately $4,600 in cash, the two fled in a getaway vehicle driven by a third man.

[¶3.]          Following an investigation, law enforcement arrested Roger Kihega, Gregory Two Hearts, and Michael Washington.  Washington pleaded guilty to robbery; Two Hearts was charged with aiding and abetting robbery; and Kihega was charged with robbery and possession of a firearm by a convicted felon.  This appeal concerns Kihega.

[¶4.]          At Kihega's trial, the State called Two Hearts to testify.  Outside the presence of the jury, the circuit court questioned Two Hearts whether he intended to exercise his Fifth Amendment right to remain silent.  Two Hearts would not respond.  Although Two Hearts subsequently received immunity, he continued to

not respond to questions in chambers or in front of the jury, and the circuit court jailed Two Hearts for contempt.

[¶5.]     Washington had cooperated with law enforcement and he testified.  He provided a detailed description of the three men's individual acts inside the casino, in their escape, and in their disposition of the robbery proceeds.  He indicated that he and Kihega, armed with .25 caliber and 9 millimeter handguns, entered the casino and discharged their guns into the ceiling.  Washington stayed in the back of the casino where he took a patron's wallet and cellphone while Kihega went to the front counter and took the cash from the clerk.  Washington testified that he and Kihega then left the scene in the getaway vehicle driven by Two Hearts.

[¶6.]     With respect to the escape, Washington indicated that he snapped the patron's cellphone in half and threw it out of the car as the three fled to Hankinson, North Dakota.  While in Hankinson, they spent a "couple hours" at a casino gambling before proceeding to the Mystic Lake Casino in Minnesota.  There, they obtained a hotel room, split up the stolen money, and continued gambling.  Washington testified that the three returned to Aberdeen a few days later.  Washington also testified that after he began cooperating with law enforcement following his arrest, he received a "kite"[1] from Kihega while the two were in jail.  Washington testified that in the kite, Kihega threatened Washington to "keep quiet."  Kihega also instructed Washington to tell people that he had fabricated his confession implicating Kihega.

---

1.     A kite is a note inmates use to communicate.

[¶7.]     The State introduced other evidence tending to connect Kihega with the robbery. That evidence included 24 audiotapes of jailhouse telephone conversations between Kihega and his wife. In those conversations, Kihega confirmed that he had sent the kite to Washington, telling him to keep quiet and to "shut his f—ing mouth." The audiotapes also revealed that Kihega had gone much further to absolve himself of his participation in the robbery. Kihega requested his wife tell Washington that he needed to "fix this" by concocting an excuse for his confession. Kihega suggested that Washington claim he felt threatened or that he heard the police would release him if he told them what they wanted to hear. Kihega emphasized that there would be "consequences" for Washington's disclosure of Kihega's participation in the robbery: Kihega said Washington was "f—ed" and that Kihega would "fire on his little ass" if Washington said Kihega's name. Kihega also called Washington a "snitch" and said that, if he could, he would "knock [Washington's] f—ing voice box out," explaining that "silence is our f—ing weapon." Kihega even acknowledged his low odds of escaping conviction for the robbery. He stated he was "probably gonna be gone a while this time."

[¶8.]     Detective Jeff Neal, who investigated the robbery, also testified. He indicated he had confirmed that the cell phone stolen in the robbery had "pinged" on a route that would have been used in the three men's escape. Neal also obtained Kihega's check-in receipt and player's card[2] for the Mystic Lake Casino, which provided physical evidence of Kihega's presence with the robbers in their escape and

---

2.     A card which earns rewards for playing certain types of slot machines and at some tables.

disposition of robbery proceeds. Neal also obtained an in-custody telephone recording made by Kihega to his wife on April 16, 2015, after Washington began cooperating with law enforcement. In the recording, Kihega's wife asked him whether he thought law enforcement possessed surveillance footage of him in the North Dakota casino visited by Washington and Two Hearts. He admitted: "I'm sure they do."

[¶9.]     Kihega moved for a judgment of acquittal at the conclusion of the State's evidence. He argued the State did not corroborate Washington's accomplice testimony. The circuit court denied the motion and submitted the corroboration question to the jury. The jury found Kihega guilty of both charges. Kihega appeals, and we restate the issues[3] as follows:

> 1.     Whether Washington's accomplice testimony was sufficiently corroborated.
>
> 2.     Whether the circuit court erred in admitting certain evidence.
>
> 3.     Whether the circuit court violated Kihega's right of confrontation by allowing Neal to testify that he had corroborated some of Washington's story through an interview with Two Hearts.
>
> 4.     Whether Kihega's sentence violated the Eighth Amendment's ban on cruel and unusual punishment.

**Decision**

> 1.     *Corroboration of Accomplice Testimony*

---

3.     Kihega also raises a "cumulative error" issue. In light of our disposition, we do not address it.

[¶10.] Kihega observes that Washington was an accomplice and that a "conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense." SDCL 23A-22-8. Kihega argues Washington's story was not corroborated with any other evidence "tending to connect" him with the robbery. *See id.* Therefore, he contends that the evidence was insufficient as a matter of law and that the circuit court should have granted his motion for judgment of acquittal.[4]

[¶11.] Corroborative evidence may not "merely show[] the commission of the offense, or the circumstances thereof" but must "tend[] to connect the defendant with the commission of the offense." SDCL 23A-22-8. However, "[a]ccomplice testimony need not be corroborated by evidence sufficient to sustain a conviction. The mandate of SDCL 23A-22-8 is satisfied where the corroborative evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and establish the guilt of the accused." *State v. Smithers*, 2003 S.D. 128, ¶ 30, 670 N.W.2d 896, 902. "In deciding this sufficiency question, circumstantial evidence may satisfy the corroboration requirement." *Id.* ¶ 30, 670 N.W.2d at 903. Additionally, "[t]he accused himself can provide the necessary corroboration." *Id.* ¶ 30, 670 N.W.2d at 902. "[W]hether the corroboration is sufficient is a question of fact for the jury." *Id.*

[¶12.] Here, the jury received both physical and testimonial evidence that clearly "tend[ed] to affirm the truth of" Washington's story. *See id.* Although the

---

4. "We review the denial of a motion for acquittal de novo." *State v. Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d 327, 330.

victims could not identify Kihega because the robbers covered their faces, the victims confirmed Washington's highly detailed description of each robber's different acts inside the casino during the robbery. Additionally, Detective Neal testified that bullet holes found in the ceiling of the casino matched the caliber of ammunition that Washington claimed he and Kihega had used. Neal also testified that shell casings matching both calibers were discovered on the floor, and a slug from a .25 caliber bullet was found lodged under a shingle on the roof. Neal further testified that a cellphone carrier confirmed that it had recorded a "pinging [from the patron's stolen cellphone] a few miles north of Aberdeen," a location on the escape route. These detailed facts unquestionably tended to affirm the truth of Washington's story because they could have been known only by the robbers who were actually inside the casino and the getaway car.

[¶13.]     The State also introduced physical and testimonial evidence circumstantially "tend[ing] to connect" Kihega with the robbery. *See* SDCL 23A-22-8; *Smithers*, 2003 S.D. 128, ¶ 30, 670 N.W.2d at 902. Detective Neal contacted the Mystic Lake Casino and obtained a receipt confirming Kihega had checked in on January 20, 2015, at 4:23 a.m. Neal also confirmed that Kihega's Mystic Lake Casino player's card was activated at 5:29 a.m. on the same day. Moreover, Kihega's own acts and statements tended to connect him to the robbery. Numerous telephone recordings reflected his consciousness of guilt and his attempts to destroy the evidence disclosing his participation in the robbery. He admitted law enforcement probably had surveillance footage of him in the North Dakota casino with Washington and Two Hearts during their escape; he repeatedly attempted to

silence Washington and get him to retract his confession implicating Kihega in the robbery; and Kihega even acknowledged he would likely be found guilty of the robbery.

[¶14.] Contrary to the dissent, the foregoing facts are "relevant" to the corroboration question. *See* dissent ¶ 54. "Evidence is relevant if . . . [i]t has any tendency to make a fact more or less probable than it would be without the evidence." SDCL 19-19-401. The evidence detailed above certainly makes Washington's story and Kihega's participation in the robbery "more . . . probable than [they] would be without the evidence." *Id.* Kihega concedes this point himself, noting that his statements "on their face . . . incriminate [him]." This evidence was clearly relevant.

[¶15.] We acknowledge the dissent's point that the evidence of Kihega's participation in the escape and disposition of the robbery proceeds, though substantial, did not directly show his physical presence inside the Aberdeen casino. But that point overlooks the fact that the contemporaneous escape and disposition of the robbery proceeds are the res gestae of the offense itself. The dissent's point also fails to give meaning to the law that circumstantial and direct evidence have equal weight, *State v. Riley*, 2013 S.D. 95, ¶ 18, 841 N.W.2d 431, 437, and corroboration may be established by circumstantial evidence alone. *State v. Nelson*, 310 N.W.2d 777, 779 (S.D. 1981).

[¶16.] Indeed, in *Nelson*, we affirmed a grand theft conviction for property stolen in Bismarck, North Dakota, even though the corroborating evidence only showed that the defendant was later near Estelline, South Dakota, in the company

of the accomplice and the stolen property. *Id.* at 779.[5] That analogous

corroboration was sufficient because "a close association between the defendant and

an accomplice in the area where the crime was committed . . . may sufficiently

connect the defendant with the commission of the crime to furnish the necessary

corroboration of an accomplice's testimony." *Id.* Kihega's close association with

Washington and Two Hearts after the robbery requires the same result here.

[¶17.]      Moreover, the dissent's argument overlooks the audiotapes in which

Kihega incriminated himself. In those tapes, Kihega repeatedly attempted to

silence Washington and get him to retract his story implicating Kihega in the

robbery. This was *relevant* evidence that certainly "tended to connect" Kihega with

the robbery. *See id.* Ultimately, we cannot accept the dissent's premise that

evidence showing Kihega's participation in the robbery escape, his disposition of the

robbery proceeds, and his consciousness of guilt and attempt to cover up the crime

have no "tend[ency] to connect" him with the robbery as a matter of law. *See*

SDCL 23A-22-8.

[¶18.]      As previously noted, "whether corroboration is sufficient is a question

for the jury." *Smithers*, 2003 S.D. 128, ¶ 30, 670 N.W.2d at 902. Here, after being

correctly instructed on corroboration, the jury found that Washington's testimony

---

5.    The dissent's analysis reflects its failure to give meaning to these rules on
      circumstantial evidence. Although the dissent correctly recites the rule that
      corroborative evidence need only "tend[] to connect" the defendant with the
      offense, its analysis wrongly requires more. In the dissent's view, the
      evidence must *directly* connect Kihega to the robbery. *See* dissent ¶¶ 50, 53,
      54. However, the law of circumstantial evidence does not require a direct
      connection or link.

was sufficiently corroborated. Taken together, the victims' testimony, the ballistics evidence, the confirmation of the three men's escape and disposition of robbery proceeds, and Kihega's own words "tended to connect" him to the robbery. *See* SDCL 23A-22-8. The corroboration rule is not a codification of some new super burden of proof that is to be mechanically applied in cases involving accomplices. It is a rule intended to protect defendants from convictions based *solely* on the testimony of accomplices who may have a motive to make up an unverifiable story. Kihega's conviction does not present us with such a case. We affirm the circuit court's denial of Kihega's motion for a judgment of acquittal.

2.     *Admission of Evidence*

[¶19.]      Kihega argues the circuit court erred in admitting into evidence: (a) 24 audiotapes of conversations between Kihega and his wife; (b) Neal's rebuttal testimony regarding an April 16 call Kihega made to his wife; and (c) Neal's testimony disclosing out-of-court witness statements regarding Kihega's various residences.

[¶20.]      "[E]videntiary rulings are presumed correct[.]" *State v. Berget*, 2014 S.D. 61, ¶ 13, 853 N.W.2d 45, 51-52. We review those rulings for an abuse of discretion. *State v. Engresser*, 2003 S.D. 47, ¶ 15, 661 N.W.2d 739, 746. An abuse of discretion is "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Kvasnicka*, 2013 S.D. 25, ¶ 17, 829 N.W.2d 123, 127-28. "If error is found, it must be prejudicial before this Court will overturn the trial court's evidentiary ruling." *State v. Harris*, 2010 S.D. 75, ¶ 8, 789 N.W.2d 303, 307.

a.     *Audiotapes.*

[¶21.]     Kihega first argues the audiotapes of his jailhouse conversations with his wife were not relevant. He contends his "statements contained no evidence pertinent to whether or not Kihega committed" any crime. But as previously discussed, Kihega's statements showed his consciousness of guilt, his attempts to cover up his participation in the robbery, and his attempts to get Washington to retract his confession implicating Kihega. This was circumstantial evidence of his participation in the crime. *Nelson*, 310 N.W.2d at 779.

[¶22.]     Kihega also argues the audiotapes were unduly prejudicial. A "court may exclude relevant evidence if its probative value is substantially outweighed" by the danger of "unfair prejudice[.]" SDCL 19-19-403 (Rule 403). "The law favors admitting relevant evidence no matter how slight its probative value." *State v. Bunger*, 2001 S.D. 116, ¶ 11, 633 N.W.2d 606, 609. The "admission of . . . evidence is favored under [Rule 403], and the judicial power to exclude such evidence should be used sparingly." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484.

[¶23.]     Kihega contends the audiotapes were unfairly prejudicial because the State "intended to portray [him] in a negative light." He points out the tapes "contained multiple curse words and displayed Kihega in various states of anger." But the rule does not exclude this kind of evidence. "[V]irtually all relevant evidence presented at trial is harmful to the other party[.]" *Id.* ¶ 30, 764 N.W.2d at 484. To cause "unfair prejudice, the evidence must persuade the jury in an *unfair and illegitimate way.*" *Id.*; *see also Old Chief v. U.S.*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Here, the tapes did not risk persuading the jury in an

unfair or illegitimate way. They were used to connect Kihega with the crime. The tapes were relevant, and the circuit court did not abuse its discretion in determining that any prejudice engendered by Kihega's use of coarse language and apparent frustration with Washington did not substantially outweigh the tapes' probative value.

[¶24.] Kihega next argues the conversations with his wife were confidential communications protected by spousal privilege. "A communication is confidential if it is made privately by any person to his or her spouse during their marriage and is not intended for disclosure to any other person." SDCL 19-19-504(a). Kihega acknowledges his conversations were electronically monitored by jailers. Therefore, he attempts to distinguish his case from *State v. McKercher*, 332 N.W.2d 286, 287-88 (S.D. 1983), where this Court held that the presence of a jailer in the same room rendered the privilege unavailable. Kihega contends that *McKercher* does not apply because it did not involve electronic monitoring of conversations.

[¶25.] Kihega's focus on the method of monitoring overlooks the relevant question: whether he had an expectation of privacy in the communications. *McKercher* emphasized the expectation of privacy requirement, noting that "anything said [in front of a jailer] could not legitimately be intended as private." *Id.* at 288. This Court explained that spousal privilege did not protect such statements because "[that defendant] was a prison detainee who, under the circumstances, *knew or should have expected* his conversation would be overheard *or monitored* and would not be private." *Id.* (emphasis added). Kihega also had no expectation of privacy in these conversations. Before he placed the calls, he

received notice that his telephone conversations would be monitored and recorded. The circuit court did not abuse its discretion in admitting the audiotapes.

>    b.   *Neal's rebuttal testimony concerning Kihega's April 16 call to his wife.*

[¶26.]     During the State's rebuttal on the final day of trial, the State asked Detective Neal to testify about the content of an April 16 recorded telephone conversation between Kihega and his wife.[6]  Neal testified that Kihega's wife had asked whether Kihega thought law enforcement possessed a video recording of the three men at the casino in North Dakota.  Kihega responded, "I'm sure they do." The State offered the testimony to rebut Kihega's alibi claim that he was last seen at a friend's residence in Cokato, Minnesota, at a time that may not have permitted his presence during the robbery in South Dakota.  Kihega objected on the ground of hearsay.  The State contended the exchange was admissible under the hearsay exception for adoptive admissions.  *See* SDCL 19-19-801(d)(2)(B).  The circuit court admitted the evidence.

[¶27.]     On appeal, Kihega challenges the court's admission of both his wife's question and his answer.  He contends the exchange should have been excluded because his wife's statement was in the form of a question, which was not an "assertion" that could have been adopted by Kihega.  *See* SDCL 19-19-801(d)(2)(B) (an adoptive admission is not hearsay if it is a "statement" and "one the party manifested that it adopted or believed to be true"); SDCL 19-19-801(a) (a statement

---

6.    Although the State possessed the audio recording, it appears that the State asked Neal to testify to relevant portions of the exchange in order to avoid confrontation issues regarding Two Hearts.

is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion").

[¶28.] We agree with Kihega's point that, generally, questions cannot be the basis for adoptive admissions because questions are usually not assertions. As the Seventh Circuit observed, unlike an assertion, a question is "designed to elicit information and a response[.]" *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013). Here, rather than making an assertion, Kihega's wife appears to have genuinely wondered whether law enforcement possessed surveillance footage of him with the other robbers at the North Dakota casino. Therefore, her question could not have been the predicate for an adoptive admission by Kihega. *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006) (distinguishing for purposes of adoptive admission analysis between questions accusing a defendant "of killing someone and ask[ing] him to explain it," which includes an implicit accusatory statement, and questions only inquiring if a defendant "had killed someone"); *State v. Thompson*, 283 A.2d 513, 520 (N.J. 1971); *but see United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996).

[¶29.] Nevertheless, the circuit court did not err in admitting the exchange. Because the inquiry by Kihega's wife was not an assertion, her portion of the exchange was not within the hearsay prohibition. "An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990). That is because such questions are not "offered for the truth" of the subject referenced in the question. *United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006). Further, the question was not offered to prove

Kihega's presence in the North Dakota casino; rather, it was offered to give context for Kihega's answer. "Statements providing context for other admissible statements are not hearsay because they are [also] not offered for their truth." *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006); *accord Williams*, 445 F.3d at 736.

[¶30.]     The remaining question concerns the admissibility of Kihega's answer. Kihega argues his response constituted improper rebuttal evidence. Kihega notes that he did not introduce evidence in his case disputing he was with Washington and Two Hearts in the North Dakota casino. Kihega contends his presence there *after* the robbery was not relevant to rebut his alibi that he was in Minnesota *before* the robbery.

[¶31.]     We agree with the circuit court's determination that this evidence was relevant to rebut Kihega's alibi. Kihega's conceded association with the other robbers during their escape did relate to events after the robbery, but it was relevant because the escape was part of the res gestae of the offense. Additionally, as we stated in *Nelson*, an association with accomplices in the possession of stolen property after the crime circumstantially connects the defendant with the commission of the crime. 310 N.W.2d at 779. Thus, Kihega's answer was relevant to circumstantially rebut his alibi, and the circuit court did not abuse its discretion in admitting the evidence.

> c.     *Neal's testimony disclosing out-of-court witness statements regarding Kihega's various residences.*

[¶32.]     During rebuttal regarding Kihega's Minnesota alibi, the State asked Detective Neal whether Kihega had "consistent residences" and whether he stayed

in different places in Minnesota and South Dakota.  The following exchange
occurred:

> Q. During your investigation in this case have you became
> [sic] familiar with the Defendant's living arrangements?
>
> A. I have somewhat, yes.
>
> Q. Did he have consistent residences?
>
> A. No.
>
> Q. Can you explain to the jury what you mean by that,
> please?
>
> A. From what I've heard, talking to different people, it
> sounds like—

At this point Kihega made a hearsay objection, but the circuit court allowed Neal to
finish his answer.  Neal continued: "[it] sounds like [Kihega] moves from place to
place, [and] has different places that he stays."  Kihega argues Neal's answer
introduced inadmissible hearsay.

[¶33.]       We do not reach the hearsay question because even if Neal's answer
was improper, its admission was harmless error.  In *State v. Davi*, 504 N.W.2d 844,
855 (S.D. 1993), we held "that although it was error for the trial court to admit
hearsay statements . . . the error was harmless as the evidence was cumulative of
other evidence presented independently at trial."  The alleged error is also harmless
here.  Kihega did not object to Neal's first answer that Kihega did not have
consistent living arrangements and residences, and Neal's subsequent answer did
not add much more than the source of Neal's information—"different people."
Moreover, Kihega's own alibi witness was a different person who confirmed that
Kihega had inconsistent living arrangements.  The alibi witness testified that
Kihega "leaves when he wants to" and that "[n]obody really knows [Kihega's] plans

but him." We find the alleged error "was harmless and did not contribute to the verdict obtained." *See State v. Zakaria*, 2007 S.D. 27, ¶ 21, 730 N.W.2d 140, 146.

### 3. *Kihega's Right of Confrontation*

[¶34.] During his case, Kihega attempted to impeach Detective Neal's testimony by asking him about a number of things he failed to do to corroborate Washington's confession. For example, Kihega suggested that Neal had not substantiated or corroborated Washington's version of events with "anyone . . . who can recall seeing [Kihega] . . . in the days subsequent to January 19 in Aberdeen[.]" Although Neal had interviewed Two Hearts after January 19, both parties knew that Two Hearts was in jail for contempt and unavailable as a witness at that point in the trial. Therefore, the State attempted to rehabilitate Neal by having him disclose that he had interviewed someone: Two Hearts. The circuit court allowed only this limited rehabilitation, prohibiting the State from going "into the specifics of what Mr. Two Hearts said." The State then asked Neal whether he had corroborated "some of [Washington's] admissions about the robbery with Greg Two Hearts," and Neal confirmed that he had. Kihega now argues this answer violated his Sixth Amendment right to confront and cross-examine Two Hearts. *See Crawford v. Washington*, 541 U.S. 36, 52, 124 S. Ct. 1354, 1365, 158 L. Ed. 2d 177; *State v. Carothers*, 2006 S.D. 100, ¶ 16, 724 N.W.2d 610.[7]

[¶35.] Kihega concedes "no actual [hearsay] statement [of] Two Hearts was introduced." However, he contends his inability "to cross-examine Two Hearts

---

7. We review such questions concerning constitutional rights de novo. *State v. Spaniol*, 2017 S.D. 20, ¶ 23, 895 N.W.2d 329, 338.

about any alleged corroborating statements" effectively "allowed the State an even greater windfall than if Two Hearts had actually testified." The State responds that Kihega opened the door to such an inquiry when he repeatedly accused Neal of not having substantiated or corroborated Washington's version of events with anyone. At trial, the State pointed out that Kihega had pursued this line of impeachment knowing that the State had corroboration from Two Hearts but could not respond. Thus, as the State puts it: "the State was simply following up on the fact that Neal had taken steps to corroborate Washington's story with Two Hearts[.]"

[¶36.] We conclude that in this context, Neal's limited answer was not prohibited by the Sixth Amendment. We first note that Neal's answer was not hearsay. Two Hearts's out-of-court statements were not repeated by Neal in court, and Neal's testimony was not offered to prove the truth of Two Hearts's out-of-court statements. Rather, Neal's testimony rebutted the defense's inference that Neal had failed to corroborate Washington's story with anyone. As the Seventh Circuit noted in a similar legal context, "[T]he Sixth Amendment does not bar out-of-court statements when the statement is not offered to prove the truth of the matter asserted; thus, the Sixth Amendment poses no bar to the admission of non-hearsay statements." *United States v. James*, 487 F.3d 518, 525 (7th Cir. 2007). *See also United States v. Cruz*, 993 F.2d 164, 169 (8th Cir. 1993). We have also noted that when this kind of out-of-court statement is not offered to prove the truth of the matter asserted, "the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person *repeating* the out-of-court statement." *State v. Johnson*, 2009 S.D. 67, ¶ 23, 771 N.W.2d 360, 369 (citing *Tennessee v.*

*Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 2081-82, 85 L. Ed. 2d 425 (1985)); *accord* Glen Weissenberger & James J. Duane, *Weissenberger's Federal Evidence* § 801.2, at 521-22 (Matthew Bender, 7th ed.) ("Testimonial hearsay is barred by the Sixth Amendment only if the statement is offered as evidence of the truth of what was said by that witness, and only if that witness does not testify about the statement at trial."). Here, Neal's answer was not used to prove something Two Hearts stated, and Neal was subject to cross-examination regarding his answer. Kihega's right of confrontation was not violated.

[¶37.] Kihega contends Neal's answer also had the practical effect of allowing one accomplice (Two Hearts) to corroborate another accomplice (Washington). Kihega observes that "South Dakota case law does not allow for one accomplice to corroborate the testimony of another accomplice." *See State v. Dominiack*, 334 N.W.2d 51, 54 (S.D. 1983). Kihega notes that he "requested and was refused the opportunity to have a jury instruction included which informed the jury on the issue." However, Neal's answer was not offered to prove that Washington's story was corroborated by Two Hearts, and the State did not argue to the jury that it was. Further, the jury was correctly instructed on the law of accomplice corroboration. We conclude that Kihega was not convicted solely on the testimony of one accomplice corroborating another.

### 4. *Cruel and Unusual Punishment*

[¶38.] Kihega was sentenced to fifty years in the penitentiary, with twelve years suspended and 224 days credited for time served on the robbery conviction. On the firearms conviction, he received a concurrent five-year sentence. On appeal, Kihega argues his sentence constitutes cruel and unusual punishment within the

meaning of the Eighth Amendment. This Court "generally reviews a circuit court's decision regarding sentencing for abuse of discretion." *State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486. "However, when the question presented is whether a challenged sentence is cruel and unusual in violation of the Eighth Amendment, we conduct a de novo review." *Id.* We first determine "whether the sentence[] imposed . . . [is] grossly disproportionate to [the] offense[]." *Id.*

[¶39.]     A review for gross disproportionately requires us to "first compare the gravity of the offense—i.e., 'the offense's relative position on the spectrum of all criminality'—to the harshness of the penalty—i.e., 'the penalty's relative position on the spectrum of all permitted punishments.'" *State v. Rice*, 2016 S.D. 18, ¶ 13, 877 N.W.2d 75, 80 (quoting *Chipps*, 2016 S.D. 8, ¶¶ 35-38, 874 N.W.2d at 489). "If the penalty imposed appears to be grossly disproportionate to the gravity of the offense, then we will compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'" *Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d at 489 (quoting *Solem v. Helm*, 463 U.S. 277, 291, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983)).

[¶40.]     Kihega committed robbery, which involves "the intentional taking of personal property . . . in [the] possession of another from the other's person or immediate presence, and against the other's will, accomplished by means of force or fear of force[.]" SDCL 22-30-1. "[T]he force used in a robbery 'makes the violation of the person more atrocious than private stealing.'" *State v. Robertson*, 740 A.2d 330, 334 (R.I. 1999) (quoting 4 William Blackstone, *Commentaries* *242). Indeed, "[a]rmed robbery is one of the most serious offenses in a civilized society. It is

fraught with danger of serious physical harm, even death—not only to the victim but also to any person at the scene." *State v. Fisher*, 321 So. 2d. 519, 520 (La. 1975). And because Kihega used a gun, the level of the offense was enhanced to robbery in the first degree. SDCL 22-30-6.

[¶41.] "In conducting the threshold comparison between the crime and the sentence, we also consider other conduct relevant to the crime." *Chipps*, 2016 S.D. 8, ¶ 40, 874 N.W.2d at 490. In this case, Kihega not only brandished a firearm, but discharged it inside the casino, demanding that everyone get down on the ground. Kihega also held the counter clerk at gunpoint as he ordered her to fill the bag with money. A crime like this is clearly on the graver end of the spectrum of criminality.

[¶42.] We next examine the harshness of the penalty. Because the court imposed a term of years, Kihega is eligible for parole under SDCL 24-15-4, which this Court takes into consideration. *See State v. McCahren*, 2016 S.D. 34, ¶ 36, 878 N.W.2d 586, 601. Given the gravity of Kihega's offense, the penalty imposed does not appear to be grossly disproportionate.

[¶43.] Kihega also contends the circuit court abused its discretion in imposing the sentence. "Within constitutional and statutory limits, the trial courts of this state exercise broad discretion when deciding the extent and kind of punishment to be imposed." *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83. "[A] sentence within the statutory maximum generally will not be disturbed on appeal." *Id.*

[¶44.] Kihega's sentence was under the statutory maximum. However, he claims his sentence greatly exceeded others imposed in Brown County since 2010.

Kihega also notes that Washington received a fifteen-year sentence with ten years suspended and that the average sentence for others during that period had been sixteen years. Kihega argues that similarly situated defendants should not "receive diametrically opposite punishments." *State v. Bonner*, 1998 S.D. 30, ¶ 18, 577 N.W.2d 575, 580. "This principle naturally flows from the notion that 'when . . . statutory ranges are established, the legislative intent is that "the more serious commissions of the crime deserve sentences at the harsher end of the spectrum."'" *Rice*, 2016 S.D. 18, ¶ 24, 877 N.W.2d at 83 (quoting *State v. Bruce*, 2011 S.D. 14, ¶ 32, 796 N.W.2d 397, 407). But "[e]ven so, the fact that [defendants] plead[] guilty to the same offense does not mean they share the same level of culpability for that offense." *Id.* We look at "past records, demeanor, degree of criminal involvement, etc.," when evaluating the justness of such a disparity. *Id.*

[¶45.] Here, the circuit court observed that Kihega had a violent background, which included convictions of serious crimes. On the other hand, Kihega acknowledges Washington's criminal history was less severe. Thus, this difference in sentencing does not reflect an abuse of discretion.

[¶46.] Kihega further argues the circuit court failed to consider testimony highlighting his chances for rehabilitation. We disagree. The circuit court expressly noted that any "significant sentence" would keep Kihega, at thirty-four years of age, "in the penitentiary for a long time." The court also noted that thirty-eight years was "a long time" and that Kihega "had a difficult background." Nevertheless, the court reiterated its overriding concern with Kihega's proven record of criminal violence. Here, the court imposed a sentence below the

maximum, and Kihega is eligible for parole. We have previously stated that the possibility of parole aids in striking "a balance between retribution, *rehabilitation*, and deterrence." *See id.* ¶ 28, 877 N.W.2d at 85 (emphasis added). Given the wide latitude sentencing courts possess, we do not believe the court abused its discretion.

[¶47.] Affirmed.

[¶48.] GILBERTSON, Chief Justice, and KERN, Justice, concur.

[¶49.] SEVERSON, Justice, and WILBUR, Retired Justice, dissent.


SEVERSON, Justice (dissenting).

[¶50.] I respectfully dissent. The evidence introduced in this case merely shows the commission of the offense and the circumstances thereof. It does not connect Kihega to the commission of the robbery.

[¶51.] "The standard of review for a motion for acquittal is 'whether the State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged.'" *State v. Talarico*, 2003 S.D. 41, ¶ 38, 661 N.W.2d 11, 24 (quoting *State v. Larson*, 1998 S.D. 80, ¶ 9, 582 N.W.2d 15, 17). SDCL 23A-22-8 provides: "A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." "Corroborating evidence need not be sufficient alone to sustain a conviction." *Talarico*, 2003 S.D. 41, ¶ 38, 661 N.W.2d at 24. "Evidence is sufficient to corroborate the testimony of an accomplice if it tends to 'affirm the truth of the

testimony of the accomplice and establish the guilt of the accused.'" *Id.* (quoting *State v. Phyle*, 444 N.W.2d 380, 382 (S.D. 1989)).

[¶52.]     "There is no requirement that every material fact testified to by the accomplice be corroborated." *State v. Graham*, 2012 S.D. 42, ¶ 39, 815 N.W.2d 293, 307. "[C]ircumstantial evidence can satisfy requirements of corroboration." *State v. Nelson*, 310 N.W.2d 777, 779 (S.D. 1981). Thus, "a close association between the defendant and an accomplice in the area where the crime was committed may sufficiently connect the defendant with the commission of the crime to furnish the necessary corroboration of an accomplice's testimony." *Id.*; *accord State v. Schafer*, 297 N.W.2d 473, 475 (S.D. 1980); *State v. McDowell*, 391 N.W.2d 661, 667 (S.D. 1986). "Corroboration may [also] be found from the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed." *Graham*, 2012 S.D. 42, ¶ 34, 815 N.W.2d at 306.

[¶53.]     Washington's testimony regarding the details of the robbery was largely corroborated by other witnesses at trial. Those witnesses confirmed that a robbery occurred, there were two male robbers, shots were fired, and property was stolen. Law enforcement also confirmed that Washington testified truthfully about the type of weapons involved. But, crucially, such evidence does not "tend[] to connect the defendant with the commission of the offense." *See* SDCL 23A-22-8. No witness testified that he or she saw Kihega in or around Aberdeen on the day of the offense or with Washington. Kihega's only established association with Washington was at a casino in a different town and different state, hours after the offense. Detective Neal testified that no weapons, ammunition, clothing, bandanas, gloves,

cell phones, money, or money bands were found after the robbery. No evidence indicated Kihega owned, possessed, or had access to the weapons involved. Nothing in Kihega's conversations with his wife connected Kihega to the robbery. No motive or opportunity evidence was introduced.

[¶54.]     Therefore, in this case, the corroborating evidence "merely shows the commission of the offense, [and] the circumstances thereof." *See id*. The State's argument that the bigger picture of the robbery is corroborated is unavailing in light of the fact that these details are not relevant to Kihega's involvement in the offense. They certainly corroborate Washington's testimony as to the circumstances of the offense. But no corroborating evidence linking Kihega to the robbery was introduced. "The jury exclusively judges witness credibility and weighs evidence." *Graham*, 2012 S.D. 42, ¶ 29, 815 N.W.2d at 305. However, there must be sufficient corroborating evidence from which the jury could determine that Kihega was connected to the crime. Our statute is clear, "[t]he corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." SDCL 23A-22-8. Finding no evidence that sufficiently corroborates Washington's testimony, Kihega's conviction should be reversed, and the Court need not reach the remaining three issues presented.

[¶55.]     WILBUR, Retired Justice, joins this dissent.