#28245-a-SLZ
**2018 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

JASON WAYNE DUNKELBERGER,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RODNEY J. STEELE
Retired Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

QUINCY R. KJERSTAD
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


BEAU J. BLOUIN of
Minnehaha County
    Public Defender's Office
Sioux Falls, South Dakota                    Attorneys for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 12, 2018
OPINION FILED **03/07/18**

#28245

ZINTER, Justice

[¶1.]        Jason Wayne Dunkelberger was convicted of first-degree robbery. Much of the evidence directly implicating him was elicited from an accomplice. On appeal, Dunkelberger argues that the circuit court erred in admitting a surveillance video of him and the accomplice the day before the robbery. Dunkelberger contends that without the video, there was insufficient evidence to corroborate the accomplice's testimony. We disagree and affirm.

*Facts and Procedural History*

[¶2.]        Lynde Miller was working at Jackson's Casino, located at the corner of Minnesota Avenue and 17th Street in Sioux Falls, during the early morning hours of December 9, 2015. At approximately 1:30 a.m., while Miller was counting money from the till, the casino's doorbell rang. Miller went to the door and was confronted by a man wearing a heavy coat over a hooded sweatshirt. The man's face was covered by the hood, heavily tinted sunglasses, and a mask or bandana. He forced himself into the casino, placed his hand in his right pocket, and demanded money. Miller observed a "bulge" in the man's pocket, which she believed was a gun.

[¶3.]        Miller gave the robber the money she was counting, which was bundled together with either paperclips or rubber bands. She also gave him money from the safe. The robber then told her to "sit" as he left the casino. Miller activated the panic button and watched him walk east down 17th Street and get into the passenger side of a light-colored sedan located a block away.

[¶4.]        Law enforcement arrived a few minutes later. Miller described the robber and said he was about 5′5″ or 5′6″ tall. Officer Matt Vandervelde walked

-1-

toward the area where the robber went and discovered a pair of wet footprints that were headed in the direction of the casino. He did not observe any other footprints in the area.

[¶5.] Detective Chris Bauman started an investigation. He noted that the description provided by Miller, as well as that shown in the casino's surveillance video, matched the description of an individual from another robbery. It also matched the description of an individual, later identified as Dunkelberger, who had been dropped off at the Truck Towne Plaza gas station in Beresford the night before the Jackson's Casino robbery. Video surveillance from Truck Towne Plaza showed Dunkelberger getting out of the passenger door of a white sedan and walking inside. He was wearing a heavy coat with the hood up and a mask or bandana covering most of his face. Dunkelberger grabbed a few items, approached the counter, and lowered the mask to reveal his face. He purchased the items and left as a passenger in the white sedan.

[¶6.] Detective Bauman interviewed Dunkelberger concerning his possible involvement in the robbery. Dunkelberger indicated that he "was at the end of his rope" and could not make enough money to support his family. But he denied involvement in the casino robbery. The detective showed Dunkelberger still images from the Truck Towne Plaza video. Dunkelberger admitted that it was him in the video and that the white car belonged to his babysitter Mandy Konop.

[¶7.] Detective Adam Zishka interviewed Konop. Konop implicated both herself and Dunkelberger. Dunkelberger was subsequently indicted for first-degree

robbery.  Konop received a lesser charge in exchange for cooperating with law enforcement and agreeing to testify against Dunkelberger.

[¶8.]          During trial, Konop described in detail what occurred during the robbery.  She testified that she drove Dunkelberger to Jackson's Casino in her white car, circled the block several times, and parked facing the casino a "block or two" away on the north side of 17th Street.  She testified that Dunkelberger went into the casino and returned five minutes later with money that was "paper-clipped together in little bundles."  She also testified that Dunkelberger said the casino employee "was so dumb, he didn't even have to show her the gun."

[¶9.]          Miller informed the jury that the man who robbed the casino was 5′5″ or 5′6″ tall, which matched Dunkelberger, who was 5′6″ tall.  She also testified that she never actually saw a gun and that the money she gave the robber was bundled with either paperclips or rubber bands.

[¶10.]          During Detective Bauman's direct examination, the State moved to introduce the surveillance video from Truck Towne Plaza.  Dunkelberger objected for lack of foundation.  The circuit court overruled the objection and admitted the video, which was then shown to the jury.  The video showed both Dunkelberger getting out of Konop's white vehicle and his appearance inside the Beresford gas station the night before the robbery.

*Decision*

[¶11.]          Dunkelberger argues the circuit court erred in admitting the Truck Towne Plaza video without a proper foundation.  He further argues that without the video, there was insufficient evidence to corroborate Konop's accomplice testimony.

Consequently, he argues that there was insufficient evidence to sustain the verdict and that his conviction must be reversed. We disagree because even if admission of the video was error, the error was harmless.

[¶12.] We first observe that although Dunkelberger objected to the video because it lacked a foundation, his own admissions effectively satisfied the foundation requirement. A foundation is necessary "to support a finding that the item is what the proponent claims it is." SDCL 19-19-901(a). In this case, Dunkelberger admitted to Detective Bauman that he was the individual depicted in the Truck Towne Plaza surveillance video and that he was at that location with Konop on December 8, 2015. He also admitted that the white sedan was Konop's vehicle.

[¶13.] More importantly, the State introduced sufficient evidence to corroborate Konop's accomplice testimony and establish Dunkelberger's guilt without the video evidence. Accomplice testimony alone cannot support a conviction "unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense." SDCL 23A-22-8. The corroborative evidence must show more than just the commission or circumstances of the offense. *Id.* However, "accomplice testimony need not be corroborated by evidence sufficient to sustain a conviction." *State v. Kihega,* 2017 S.D. 58, ¶ 11, 902 N.W.2d 517, 522. "Corroboration is sufficient if it tends to affirm the accomplice's testimony and establish the accused's guilt." *State v. Wheeler,* 2013 S.D. 59, ¶ 9, 835 N.W.2d 871, 873. Both circumstantial evidence and the accused's own words may provide the necessary corroboration. *Kihega,* 2017 S.D. 58, ¶ 11, 902 N.W.2d at 522.

[¶14.]     Here, there was direct and circumstantial evidence independent of the Truck Towne Plaza video that tended to affirm Konop's testimony and establish Dunkelberger's guilt.  First, as previously noted, Dunkelberger admitted to Detective Bauman that he rode with Konop the night before the robbery in her white sedan in clothing similar to that worn by the robber.  He also admitted he was having financial problems, which was consistent with Konop's testimony and suggested a motive to commit the robbery.  Thus, Dunkelberger's own words corroborated some of Konop's story and provided some circumstantial evidence of guilt.

[¶15.]     Additionally, Miller corroborated numerous parts of Konop's story. First, Miller corroborated Konop's story regarding the use of a gun in the robbery. Konop testified that Dunkelberger took a gun from the car to use in the robbery but that when he returned to the vehicle, he said he "didn't even have to show [Miller] the gun."  Miller confirmed that she did not actually see a gun.  Second, Miller corroborated Konop's story concerning the money that was taken in the robbery. Konop testified that the money Dunkelberger took was bundled in paperclips. Miller testified that the money she gave to the robber was bundled either in paperclips or rubber bands.  Third, Miller corroborated Konop's details of the automobile used in the robbery.  Konop testified that she parked her white car a "block or two" away on the north side of 17th Street.  Miller confirmed those facts, noting that she observed the robber depart east down 17th Street and get into a light-colored sedan parked on the north side of the street.

[¶16.]	Finally, there was physical evidence tending to affirm Konop's story and establish Dunkelberger's involvement. The jury could observe Dunkelberger's height, which was consistent with the physical description provided by Miller. The jury was also able to compare the footprint photographs with Dunkelberger's shoes and could have reasonably inferred that Dunkelberger wore the same shoes during the robbery.

[¶17.]	In sum, there was evidence independent of the Truck Towne Plaza surveillance video that "tend[ed] to affirm [Konop's] testimony and establish [Dunkelberger's] guilt." *See Wheeler*, 2013 S.D. 59, ¶ 9, 835 N.W.2d at 873. Additionally, Dunkelberger admitted that he was the person depicted in the video. We are satisfied "beyond a reasonable doubt" that admission of the video "was harmless and did not contribute to the verdict obtained." *See State v. Zakaria*, 2007 S.D. 27, ¶ 19, 730 N.W.2d 140, 146.

[¶18.]	Affirmed.

[¶19.]	GILBERTSON, Chief Justice, and SEVERSON, KERN, and JENSEN, Justices, concur.